```
                UNITED STATES DISTRICT COURT                    FILED
                NORTHERN DISTRICT OF ALABAMA                 02 APR 12 PM 2:05
                       SOUTHERN DIVISION
                                                              U.S. DISTRICT COURT
                                                              N.D OF ALABAMA
REGINAL LEE CHAMLESS,              )
                                   )
              Plaintiff,           )
                                   )
vs.                                )        Civil Action No. CV-01-S-1977-S
                                   )
AMERISOURCE CORPORATION,           )
and BRENT WILHELM,                 )
                                   )                         ENTERED
              Defendants.          )
                                                             APR 1 2 2002
```

## MEMORANDUM OPINION

This action is before the court on defendants' motion to dismiss Count One of plaintiff's complaint, which alleges that defendants violated plaintiff's rights as guaranteed by the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12112(a). *See* Fed. R. Civ. P. 12(b)(6). Upon consideration of the pleadings, this court concludes the motion is due to be granted in part and denied in part.

Neither a complaint, nor a count within a complaint, should be dismissed for failing to state a claim upon which relief can be granted, "unless it appears *beyond doubt that the plaintiff can prove no set of facts* in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (emphasis supplied); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (holding that a complaint should be dismissed for failure to state a claim "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations" of the plaintiff's complaint).[1] When ruling upon a Rule 12(b)(6) motion, the court must accept all well-pleaded facts

---

[1] *See also, e.g., Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc); *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992) ("A complaint may not be dismissed unless the plaintiff can prove no set of facts which would entitle him to relief."); *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.) ("[T]he



as true, and construe them in the light most favorable to the non-moving party. *Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232; *see also, e.g., Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983). Notice pleading is all that is required; that is,

> "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. ... The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Conley*, 355 U.S. at 47-48, 78 S.Ct. at 103 (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)[2]).

Thus, the threshold requirements for a complaint to survive a Rule 12(b)(6) motion to dismiss are "exceedingly low." *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). Such motions accordingly are "viewed with disfavor and rarely granted." *Brooks*, 116 F.3d at 1369 (citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969), and *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465, 471 (5th Cir. 1968)). Even so,

---

'accepted rule' for appraising the sufficiency of a complaint is 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)), *reh'g denied*, 840 F.2d 25, *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986) (same).

[2] Federal Rule of Civil Procedure 8(a)(2) provides: "A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief...." *See also Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364 (11th Cir. 1997), stating:

> The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of [a plaintiff's] claim for relief. It is read alongside Fed.R.Civ.P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto. ...

*Id.* at 1368-69 (citation omitted).

the complaint must state a cause of action sufficient to affirmatively show the plaintiff is entitled to relief, for

> [i]t is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery.

*Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir. 1984) (quoting 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.13, at 8-118 (2d ed. 1984)).

## I. STATEMENT OF FACTS

Plaintiff, Reginal Lee Chamless, was hired by defendant Amerisource Corporation ("Amerisource") on August 3, 1999, to work in the company's "Credits Department," handling product returns.[3] Defendant Brent Wilhelm ("Wilhelm") was one of plaintiff's supervisors.[4] Plaintiff claims that he was *over*qualified for this position, due to his prior experience in the pharmaceutical and veterinary medical fields.[5] Plaintiff alleges that he "often" discussed this fact with Wilhelm, along with his hopes of achieving a management position with Amerisource.[6] Following such discussions, a supervisory position opened, and Wilhelm suggested that plaintiff apply.[7] Plaintiff did not do so, however, because he believed that he had not been employed with the company for a sufficient period of time, and also because he hoped to transfer to a different department within Amerisource.[8]

When plaintiff was hired by Amerisource in August of 1999, he was afflicted with a number

---

[3] Complaint ¶ 9.
[4] *See id.*
[5] *See id.*
[6] *Id.*
[7] *See id.*
[8] *See id.*

3

of pre-existing health conditions.[9] These included a ruptured spinal disk and two heart attacks — one occurring in 1993, and another in 1996. Plaintiff claims that he told Wilhelm about these pre-existing health conditions after he was hired by Amerisource.[10]

During November of 1999, plaintiff became "weak, short of breath, and dizzy."[11] He telephoned his doctor, who reportedly told plaintiff to take a day off, to permit his condition to improve. When plaintiff's condition had not meliorated the following day, his "doctor advised him to take a week off from work."[12] Plaintiff appears to have heeded his doctor's advice.

Despite this recuperation period, early in December of 1999, plaintiff experienced "light-headedness and a tingling in his left arm" when he "bent down to do some lifting."[13] Plaintiff approached his supervisor, Paula Preston, and explained that he was ill, and needed to leave work to see a doctor.[14] Plaintiff subsequently was admitted to the cardiac intensive care unit at St. Vincent's Hospital by his physician, Dr. Richard Berryman, where he underwent multiple cardiac tests. According to plaintiff, these tests indicated that his symptoms were caused by a ruptured disk in his neck, and a blocked artery in his heart.[15] Dr. Berryman recommended that plaintiff have immediate surgery on the ruptured disk, to be followed by a coronary bypass procedure, once plaintiff recovered from the disk surgery.[16] Despite this recommendation, plaintiff decided to postpone both surgeries, because Amerisource was in the midst of changing its insurance carrier to

---

[9] *See id.* ¶ 10.
[10] *See id.*
[11] *Id.* ¶ 11
[12] *Id.*
[13] *Id.* ¶ 12.
[14] *See id.*
[15] *Id.*
[16] *See id.*

another company which, plaintiff believed, would provide better coverage for the procedures.[17]

In mid-December of 1999 — prior to his surgeries — plaintiff approached Paula Preston and Wilhelm to discuss his medical condition, physical limitations, and impending surgery. These physical limitations included being restricted to "lifting [no] more than five pounds and limited neck mobility."[18] Plaintiff claims that Preston and Wilhelm told him that "they would do their best to find a position in the company which would accommodate [his] restrictions."[19] Plaintiff also claims that he told Preston and Wilhelm that "he hoped his absences because of health problems would not effect [sic] his opportunities to advance in the company[,] because he wished to be with Amerisource for a long time, and hopefully move into management."[20] According to plaintiff, "Wilhelm responded, 'Don't worry about that Reggie. All this information will be in your file and I'm sure people will understand.'"[21]

Plaintiff asserts that, the night before he was to return to work, during "either the week before or ... after Christmas," he went to the emergency room at St. Vincent's Hospital complaining of chest pain.[22] He was admitted to the cardiac intensive care unit that evening, and was unable to reach a telephone to contact his employer regarding his condition until the next morning.[23] Plaintiff claims that when he telephoned Wilhelm to explain why he hadn't reported for work that morning, Wilhelm "told him not to worry, stating, 'Your health is more important.'"[24]

---

[17] *See id.*
[18] *Id.* ¶ 13.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* ¶ 14.
[23] *See id.*
[24] *Id.*

5

Plaintiff underwent neck surgery in January of 2000, and double coronary bypass surgery in February of 2000. Plaintiff contends that, during those months, he regularly contacted Wilhelm to apprise him of his health and recovery status.[25]

Plaintiff contacted his doctor approximately one month following his heart surgery, and was told that he could not return to work because he required more recovery time.[26] Plaintiff also contacted Amerisource sometime during March of 2000 to discuss his return to work. Only then did plaintiff learn from Wilhelm that he had been terminated, and that Amerisource allegedly had mailed a certified letter informing plaintiff of the adverse employment decision during February of 2000.[27] According to plaintiff, Wilhelm explained that "they were sorry, but [plaintiff] had missed so much time that they had to fill his position."[28] Plaintiff states that he never received Amerisource's termination letter and, further, his belief that his position with Amerisource was not actually filled until approximately six to eight months following his termination.[29] As a result, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that defendants had discriminated against him in violation of the ADA. Plaintiff received a Notice of Right to Sue letter on May 23, 2001,[30] and filed this suit on August 6, 2001.

## II. DISCUSSION

Defendants seek to dismiss Count One of plaintiff's complaint, alleging discrimination on the basis of disability in violation of the ADA. Defendants assert that plaintiff has failed to state a

---

[25] *See id.* ¶ 15.
[26] *See id.* ¶ 16.
[27] *See id.* ¶ 17.
[28] *Id.*
[29] *See id.* ¶¶ 17-18.
[30] *See id.* ¶ 19.

claim under the ADA because "he has not sufficiently plead that he is a member of the class protected by the [ADA]."[31]

As a preliminary matter, defendants argue that plaintiff brought his ADA claim against both defendants, including against Wilhelm individually.[32] While Count One of the complaint refers only to defendant Amerisource, in the event that plaintiff intended to include Wilhelm as a defendant to his ADA claim, it is due to be dismissed. The ADA does not provide for individual liability. *See Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996). *Cf. Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995) (no individual liability under the ADEA); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (no individual liability under Title VII).

Turning then to plaintiff's claim against his true employer, defendant Amerisource Corporation, the ADA provides that

> no covered entity,[33] including private employers,[34] shall discriminate against *a qualified individual with a disability* because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (emphasis supplied). The Act imposes upon employers the duty to provide "reasonable accommodations" for known disabilities, unless doing so would result in undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A).[35]

---

[31] Motion to Dismiss (doc. no. 12), ¶ 1.

[32] *See id.* § 8.

[33] 42 U.S.C. § 12111(2) provides: "The term 'covered entity' means an employer, employment agency, labor organization, or joint labor-management committee.").

[34] 42 U.S.C. § 12111(5)(A) provides, in relevant part, that: "The term 'employer' means a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person...."

[35] 42 U.S.C. § 12112(b)(5)(A) defines the term "discriminate" as including an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant [for employment] or an employee, unless such covered entity can demonstrate that the

7

To state a claim under the ADA, "a plaintiff must allege (1) that he suffers from a disability, (2) that he is a qualified individual, and (3) that a 'covered entity' discriminated against him on account of his disability." *Cramer v. State of Florida*, 117 F.3d 1258, 1264 (11th Cir. 1997) (quoting *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir. 1997)). The phrase "a qualified individual with a disability" means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In turn, the concept of "disability" is defined three ways — that is, as including any person: who has a "physical or mental impairment" that "substantially limits" one or more of the "major life activities" of such person; or who has "a record of such an impairment"; or who is "regarded as having such an impairment." *Id.* § 12102(2)(A) – (C); *see also* 29 C.F.R. § 1630.2(g). "An individual is deemed to be 'disabled' for purposes of the ADA if he satisfies any one of these three enumerated definitions." *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 911 (11th Cir. 1996).

Defendants assert that plaintiff has failed to meet his notice pleading burden as to his ADA claim because "Count One contains the conclusory statement that the plaintiff is disabled under the ADA because '(a) he has a physical impairment; (b) he has a record of such impairment; and (3) he is regarded as having such impairment.'"[36] The court disagrees, and concludes that the body of plaintiff's complaint sufficiently accords defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47-48, 78 S.Ct. at 103.

Accordingly, defendant's motion to dismiss plaintiff's ADA claim against defendant

---

accommodation would impose an undue hardship on the operation of the business of such covered entity; ...."

[36] Motion to Dismiss (doc. no. 12), ¶ 2.

Amerisource is due to be denied. An order consistent with this opinion will be entered contemporaneously herewith.

DONE this 12th day of April, 2002.

_____
United States District Judge