UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
02 DEC 11 AM 11:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| REGINAL LEE CHAMLESS, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. CV-01-S-1977-S |
| AMERISOURCE CORPORATION and BRENT WILHELM, | ) |
| Defendants. | ) |

ENTERED
DEC 11 2002
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

**MEMORANDUM OPINION**

Plaintiff, Reginal Lee Chamless, asserts a claim under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, for his former employer's discrimination on the basis of disability, and a state law claim for fraud against his former supervisor. The action presently is before the court on the motion of defendants, AmeriSource Corporation and Brent Wilhelm,[1] for summary judgment.

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S.

---

[1] Plaintiff's ADA claim against Brent Wilhelm was dismissed with prejudice on April 12, 2002. *See* doc. no. 14.

317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)) (internal quotation marks and citations omitted); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes defendants' motion for summary judgment is due to be granted.

## I. FACTUAL BACKGROUND

Plaintiff was employed by AmeriSource Corporation, a wholesale drug distributor in Birmingham, Alabama, as a "returns clerk," beginning in September of 1999.[2] His job duties entailed sorting pharmaceutical products that had been returned to stores and determining whether those products could be resold, or had to be returned to the manufacturer.[3] In order to perform those duties, plaintiff retrieved pallets loaded with bins of returned merchandise from a warehouse area, and transported them to his work area with a hand truck.[4] Plaintiff then lifted each bin onto his desk for sorting. The bins weighed as little as five pounds and as much as fifty pounds. The physical requirements of plaintiff's job were walking, bending, lifting and carrying bins weighing up to fifty

---

[2] Doc. no. 29 (Plaintiff's Evidentiary Submission in Opposition to Defendants' Motion for Summary Judgment), Ex. 4, at 99.

[3] *Id.*

[4] *Id.* at 100.

2

pounds, and moving pallets weighing up to 100 pounds.[5]  Paula Presley and defendant Brent Wilhelm were plaintiff's supervisors.[6]

Prior to his employment with AmeriSource, plaintiff had suffered multiple health problems. He had surgery in 1979, a laminectomy, to repair a ruptured disk.[7] In 1992, when plaintiff was thirty-one years old, he suffered a heart attack, and underwent an angioplasty.[8] He had another heart attack in 1995,[9] and a second angioplasty was performed; he also was prescribed heart medication.[10] During 1997, plaintiff hurt his back while working, and a laminectomy and diskectomy were performed the following year.[11] Despite this extensive medical history, plaintiff was not under any medical restrictions when he began his employment with AmeriSource.[12]

While working one day during late November of 1999, *i.e.*, approximately two months after AmeriSource had hired him, plaintiff experienced lightheadedness, shortness of breath, and fatigue.[13] He telephoned his physician's office, and spoke to a nurse about his symptoms. The nurse told him that he probably had the flu, and that he should stay home and rest.[14]

Plaintiff returned to work one week later, on Monday, December 6, 1999. After he had been working only a few hours, however, he began to experience dizziness and chest pains. Plaintiff

---

[5] *Id.* at 102.

[6] *Id.* at 59.

[7] *Id.* at 61.

[8] Doc. no. 29 (Plaintiff's Evidentiary Submission in Opposition to Defendants' Motion for Summary Judgment), Ex. 4, at 82-83.

[9] *Id.* at 87.

[10] *Id.* at 90.

[11] *Id.* at 80.

[12] *Id.* at 98.

[13] *Id.* at 124-25.

[14] Doc. no. 29 (Plaintiff's Evidentiary Submission in Opposition to Defendants' Motion for Summary Judgment), Ex. 4, at 127.

advised his supervisor that he felt ill, and that he was going to the emergency room at Saint Vincent's Hospital.[15] Plaintiff drove to the hospital, where he was admitted by his physician, Dr. Richard Berryman. He remained in the hospital until December 15, 1999. Upon discharge, plaintiff was diagnosed with three-vessel ischemic heart disease with stabilized angina, active peptic ulcer disease, esophagitis, and active cervical disk disease.[16] Dr. Berryman recommended neck surgery; due to an impending change in AmeriSource's medical benefits, however, plaintiff elected to postpone the surgery until January of 2000.[17] Plaintiff was released to work, but was restricted to lifting no more than five pounds, with limited bending and neck movement.[18]

During his hospitalization, plaintiff spoke daily by telephone with his supervisors, Brent Wilhelm and Paula Presley.[19] Shortly following his discharge from the hospital, plaintiff returned to AmeriSource and met with Wilhelm and Presley about his medical condition and impending surgery.[20] Plaintiff expressed concern about his desire to be promoted to a management position in the future, in view of his extended absence from work.[21] According to plaintiff, defendant Wilhelm told him:

> don't worry about that because we'll have a doctor's excuse stapled to that saying you had surgery . . . and that's the reason you were out of work for such and such a time, but let me assure you, take care of your health, you will have a job here; you will have a job with AmeriSource. And I stated, well, I don't want to lose my job with AmeriSource. He said, you've got a job with AmeriSource; let's take care of

---

[15] *Id.* at 128-30.

[16] Doc. no. 25 (Evidentiary Submission in Support of Defendants' Motion for Summary Judgment), Ex. B (deposition of Richard L. Berryman, M.D.), at 13.

[17] Doc. no. 29 (Plaintiff's Evidentiary Submission in Opposition to Defendants' Motion for Summary Judgment), Ex. 4, at 137-38.

[18] *Id.* at 138.

[19] *Id.*

[20] *Id.* at 141.

[21] *Id.* at 142.

4

your health first, find out what you can do.[22]

At Wilhelm's request, plaintiff confirmed his work restrictions with Dr. Berryman, and contacted Wilhelm to relay that information.[23]

A few days later, Wilhelm asked plaintiff to return to work, because Wilhelm had identified job duties at AmeriSource that were consistent with plaintiff's work restrictions.[24] The night before plaintiff was to return, however, *i.e.,* on January 5, 2000, he was readmitted to the hospital with severe chest pain.[25] Plaintiff informed Wilhelm that he was unable to report to work as scheduled due to his hospitalization.[26] During that hospitalization, plaintiff underwent neck surgery, and was discharged the next day, on January 6, 2000.[27] Upon discharge, he was restricted from working for several weeks.[28] During his recovery, plaintiff remained in contact with Wilhelm.[29]

Plaintiff was released to return to work, under the same restrictions previously imposed, on January 17, 2000.[30] He advised Wilhelm of his restrictions, and that he was unable to perform the duties of his position as returns clerk. Wilhelm told plaintiff that work nevertheless was available within his restrictions, and asked him to report the following day.[31] The evening of January 17, however, plaintiff again was admitted to a hospital with chest pains.[32] He was released from the

---

[22]*Id.* at 142-43.

[23]Doc. no. 29 (Plaintiff's Evidentiary Submission in Opposition to Defendants' Motion for Summary Judgment), Ex. 4, at 148.

[24]*Id.* at 149.

[25]*Id.* at 150-51.

[26]*Id.* at 151.

[27]*Id.*, Ex. 5 (deposition of Thomas Wilson, M.D.), at 8-10.

[28]Doc. no. 29 (Plaintiff's Evidentiary Submission in Opposition to Defendants' Motion for Summary Judgment), Ex. 4, at 164.

[29]*Id.* at 165.

[30]*Id.*, Ex. 5, at 11.

[31]*Id.*, Ex. 4, at 167-68.

[32]*Id.* at 170.

5

hospital the same night, but was readmitted on January 19, 2000.[33] A heart catheterization was performed, which showed that plaintiff's heart disease had worsened.[34]

Plaintiff again was admitted to the hospital on January 29, 2000, and underwent open-heart surgery. He remained hospitalized until February 5 or 6, 2000.[35] Upon discharge, his physical activities were restricted to bathing, dressing, and walking.[36]

Plaintiff telephoned Wilhelm during mid-February, following heart surgery, to inquire about the status of his job with AmeriSource.[37] Wilhelm advised him that his employment had been terminated because the company needed to fill the position.[38] Wilhelm encouraged plaintiff to apply for another position with AmeriSource when he had recovered sufficiently to return to work.[39] Wilhelm told plaintiff that a certified letter had been sent to him at 137 Crestmont Lane, the address that AmeriSource had recorded for plaintiff. At that time, however, plaintiff no longer lived at the Crestmont Lane address, although he still received some mail there. Plaintiff states that he previously had informed Wilhelm that his address had changed, but he does not recall providing a change of address form to AmeriSource's human resource department.[40]

Plaintiff developed complications from his surgery, and again was hospitalized from

---

[33]*Id.*, Ex. 5, at 18.

[34]Doc. no. 29 (Plaintiff's Evidentiary Submission in Opposition to Defendants' Motion for Summary Judgment), Ex. 5, at 19.

[35]*Id.* at 20.

[36]Doc. no. 25 (Evidentiary Submission in Support of Defendants' Motion for Summary Judgment), Ex. B (deposition of Richard Berryman, M.D.), at 22.

[37]Doc. no. 29 (Plaintiff's Evidentiary Submission in Opposition to Defendants' Motion for Summary Judgment), Ex. 4, at 178.

[38]*Id.* at 179.

[39]*Id.*

[40]*Id.* at 285-86.

6

February 24 through March 20, 2000.[41] Upon discharge, he still was unable to work.[42] Plaintiff ultimately applied for, and was awarded, Social Security disability benefits.[43]

Following his termination, plaintiff filed a charge with the Equal Employment Opportunity Commission, alleging that he had been subjected to discrimination due to his disability. The record does not contain a copy of the charge of discrimination, or any reference to the date on which it was filed. Even so, the EEOC issued a "Notice of Right to Sue" on May 1, 2001, which stated:

> The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.[44]

The notice also contained the following warnings:

> This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; otherwise, your right to sue based on this charge will be lost.
>
> . . . .
>
> In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in this charge **within 90 days of the date you *receive* this Notice**. Therefore you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as

---

[41]Doc. no. 25 (Evidentiary Submission in Support of Defendants' Motion for Summary Judgment), Ex. B (deposition of Richard Berryman, M.D.), at 24.

[42]*Id.* at 25-26.

[43]Doc. no. 29 (Plaintiff's Evidentiary Submission in Opposition to Defendants' Motion for Summary Judgment), Ex. 4, at 263.

[44]*Id.*, Ex. 2.

7

indicated where the Notice is signed).[45]

The notice was addressed to plaintiff at 2829 4th Street NW, Birmingham, Alabama. The record does not indicate whether that address was the one supplied by plaintiff on his EEOC charge. Plaintiff had lived at that address with his mother and a sibling from November of 1999 until November of 2000.[46] After plaintiff relocated, his mother continued to reside at that address, and plaintiff received mail there. From November of 2000 until May of 2001, plaintiff resided at several different addresses, but he neither provided a forwarding address to the United States Postal Service, nor informed the EEOC that his address had changed.[47] Moreover, at some date prior to May 1, 2001, plaintiff's mother apparently moved from the 2829 4th Street NW address to 2401 Columbiana Road, Suite 3014, Birmingham, Alabama, and the EEOC's notice of right to sue was forwarded by the Postal Service to that address.[48] Plaintiff has submitted a copy of an envelope bearing the return address of the EEOC's Birmingham District Office, to which the following label was affixed adjacent to the address window:

> CHAM829 352152013 1B00 18 05/04/01
> NOTIFY SENDER OF NEW ADDRESS
> CHAMLESS RUBY L
> 2401 COLUMBIANA RD STE 3014
> BIRMINGHAM, AL 35216-2583[49]

During his deposition, plaintiff did not recall the date on which he received notice of his right

---

[45]Doc. no. 25 (Evidentiary Submission in Support of Defendants' Motion for Summary Judgment), Ex. A, Tab 8 (emphasis in original).

[46]Doc. no. 29 (Plaintiff's Evidentiary Submission in Opposition to Defendants' Motion for Summary Judgment), Ex. 4, at 13.

[47]See id. at 7-20.

[48]Id., Ex. 2.

[49]Id.

to sue, but his complaint alleges that he received it on May 23, 2001.[50] Plaintiff filed this civil action on August 6, 2001 — ninety-seven days after the EEOC mailed the notice of his right to sue.

## II. DISCUSSION

### A.  Timeliness of Plaintiff's ADA Claim

AmeriSource contends that plaintiff has failed to demonstrate that this action was timely filed. An individual who is issued a notice of right to sue by the EEOC must file his or her civil action within ninety days of receipt of the notice. *See* 42 U.S.C. § 2000e-5(f). A plaintiff "has the initial burden of establishing that he filed his Complaint within ninety days of his receipt of the EEOC's right-to-sue letter." *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233 (11th Cir. 2002). "Once the defendant contests the issue, the plaintiff has the burden of establishing that he met the ninety day filing requirement." *Id.* at 1234 (citing *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982)).

The evidence of record establishes that the EEOC issued plaintiff's notice of right to sue on May 1, 2001.[51] The record also contains an envelope containing the EEOC's return address, and to which a forwarding label bearing the date "05/04/01" appears to have been affixed. During his deposition, plaintiff was questioned extensively about where he received mail during May of 2001, and when he received the right-to-sue letter:

>   Q.   This is a notice of right to sue from the EEOC; isn't that right?
>
>   A:   That's what it says, ma'am.
>
>   Q:   And this document appears to have been mailed to you at Fourth Street Northwest; is that correct?

---

[50]*Id.*, Ex. 4, at 276.
[51]*Id.*, Ex. 2.

9

A: That appears to be where it was mailed.

Q: Was this your address at the time this document was mailed?

A: Yes, ma'am.

Q: And the time this document was — appears to have been mailed as reflected at the bottom of [the exhibit] is May 1, 2001; is that correct?

A: That's what it says.

Q: And in May 1, 2001, your address was Fourth Street Northwest?

A: I guess so. Yes, I think so.

. . . .

Q: Okay. Do you recall receiving this notice?

A: From the EEOC?

Q: Yes.

A: I believe I do.

Q: When do you recall receiving this?

A: I don't know, ma'am. It's date mailed [sic] 5/1, so I imagine somewhere in there.

Q: Well, were you, in fact, receiving mail at the Fourth Street Northwest address at that time?

A: Yes, ma'am. This is where it was mailed to, so I guess that's where I was.

. . . .

Q: There is a statement in Paragraph 19 [of the complaint] that on May 23, 2001, Mr. Chamless received his notice of right to sue. Do you know what the basis for that statement is, Mr. Chamless?

A: No, not really.

> Q: Do you have any recollection at all of when you received that right to sue letter?
>
> A: No, ma'am.
>
> Q: Do you have any idea why your attorneys would have included that statement in this complaint?
>
> A: I have no idea.
>
> Q: But you have no recollection as you sit here today of having told your attorneys that you received a right to sue letter on May 23, 2001; is that correct?
>
> A: To the best of my ability, no, I haven't.[52]

At best, the evidence shows that Postal Service handled the envelope sent by the EEOC as late as May 4, 2001. That fact alone, however, does not establish that plaintiff timely filed his complaint. If he received the right-to-sue letter on May 4 or May 5, 2001, his complaint still would be untimely.

Moreover, the EEOC placed plaintiff on notice of the importance of recording the date on which he received notice of his right to sue. The notice issued by the EEOC contained clear warnings about the consequences of failing to timely file a complaint, and advised plaintiff that filing a complaint within ninety days of the date on which the EEOC *mailed* the notice would assure that the complaint would be considered timely.[53] Disregarding this advice, plaintiff filed his complaint ninety-seven days after the right-to-sue letter was mailed. Based on plaintiff's testimony that he did not recall the date on which he received the right-to-sue letter, as well as the other evidence of record, the court concludes that plaintiff has not satisfied his burden of establishing that he filed this

---

[52]*Id.* at 271-76.

[53]*See* the text accompanying note 45 *supra* and doc. no. 25 (Evidentiary Submission in Support of Defendants' Motion for Summary Judgment), Ex. A, Tab 8.

11

action within the ninety-day limitations period.

However, plaintiff has filed a motion for leave to file an affidavit out of time.[54] Plaintiff seeks to "clarify," through the affidavit, "contradictions" in his deposition with respect to the date on which he received the notice of right to sue from the EEOC.[55] In the affidavit, plaintiff explains for the first time that, during the period from February through April of 2001, he traveled back and forth between Indianapolis, Indiana, where he resided with his sister, and Birmingham, Alabama, for ongoing medical treatment. He states that he continued to receive his mail at 2829 4th Street NW, his mother's residence, but that "during this period" his mother moved to a retirement home located at 2401 Columbiana Road, Suite 3014, Birmingham, Alabama, to which both her and his mail was forwarded. Beginning May 1, 2001, plaintiff's address was 1200 18th Avenue South, Apartment C, Birmingham, Alabama. He further states, in pertinent part, that:

> I was not in the State of Alabama when the EEOC "mailed" my Notice of Right to Sue. When I did return to Alabama on or about May 4, 5 or 6, 2001, I had not retrieved my mail from my mother because I had car problems and could not visit her. I did not personally receive my Notice of Right to Sue from the EEOC until May 23, 2001.[56]

AmeriSource has moved to strike the affidavit[57] for two reasons: plaintiff has failed to explain why the affidavit could not have been submitted timely; and, the affidavit contradicts plaintiff's unambiguous deposition testimony and, therefore, should be disregarded as a sham. The court agrees that plaintiff has offered no good explanation for the late submission of the affidavit.

As for AmeriSource's contention that the affidavit should be considered a sham, it is well

---

[54]Plaintiff's evidentiary submissions were due to be filed no later than July 31, 2002, and plaintiff, in fact, submitted evidence opposing the motion for summary judgment on that date. *See* doc. nos. 23 & 29. Plaintiff filed the motion for leave to file out of time on August 7, 2002. *See* doc. no. 30.

[55]Doc. no. 30 (Plaintiff's Motion for Leave to File Out of Time).

[56]*Id.* (affidavit of plaintiff) ¶ 11, at 3.

[57]Doc. no. 33.

settled in this circuit that "a party cannot give 'clear answers to unambiguous questions' in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987) (quoting *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)). "When this occurs, the court may disregard the affidavit as a sham." *Rollins*, 833 F.2d at 1530 (citing *Van T. Junkins*, 736 F.2d at 658-59). Courts are admonished to "apply this rule sparingly," however, "because of the harsh effect [it] may have on a party's case." *Rollins*, 833 F.2d at 1530. Moreover, a mere discrepancy will not justify a district court's refusal to accept such evidence. *See Tippens v. Celotex Corporation*, 805 F.2d 949, 954 (11th Cir. 1986); *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980).

> To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness . . . was stating the truth. Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact. An affidavit may only be disregarded as a sham "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact ... [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."

*Tippens*, 805 F.2d at 953-54 (quoting *Van T. Junkins*, 736 F.2d at 657). Thus, the court must "find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit." *Rollins*, 833 F.2d at 1530.

During his deposition, plaintiff clearly testified, in response to unambiguous questioning by counsel for AmeriSource, that he did not recall the date he received his notice of right-to-sue from

13

the EEOC. Plaintiff further testified that he had "no idea" why his complaint alleged that he received the notice on May 23, 2001. The affidavit proffered by plaintiff directly contradicts that testimony, and plaintiff has offered no explanation for the contradiction. Defendants' motion to strike the affidavit is due to be granted.

Even if the court were to consider the affidavit, however, plaintiff's argument that the time for filing a civil action began when he retrieved the notice from his mother on May 23, 2001 still falls short. In *Lewis v. Conners Steel Co.*, 673 F.2d 1240 (11th Cir. 1982), the Eleventh Circuit addressed the issue of when the ninety-day limitations period begins to run. There, where the EEOC mailed the right-to-sue letter to an outdated address, the Court of Appeals stated:

> We need not embrace the doctrine of constructive receipt, nor close our eyes to the liberal construction the act is entitled to in order to fashion a fair and reasonable rule for the circumstances of this case. There is no reason why a plaintiff should enjoy a manipulable open-ended time extension which could render the statutory limitation meaningless. Plaintiff should be required to assume some minimum responsibility himself for an orderly and expeditious resolution of his dispute.

*Id.* at 1242. The court further held that the plaintiff should be permitted to introduce evidence that he notified the EEOC of his current address. The court explained:

> If [the plaintiff] did not contribute that minimum assistance to the process, he should not be heard to complain that he did not receive the letter delivered to the last address known to the EEOC, unless he can show . . . that other "fortuitous circumstances," or "events beyond his control" intervened, and that he "through no fault of his own" failed to receive the suit letter. Placement of this de minimis burden on the plaintiff also comports with the legislative purpose undergirding the ninety-day filing period, which "is a protection to the employer and is plainly there for its benefit alone."

*Id.* at 1243 (citations omitted) (quoting *Franks v. Bowman Transportation Co.*, 495 F.2d 398 (5th Cir. 1974), *rev'd on other grounds*, 424 U.S. 747, 96 S. Ct. 1251, 47 L. Ed. 2d 444 (1976) and *Zambuto v. American Telephone & Telegraph Co.*, 544 F.2d 1333, 1335 (5th Cir. 1977)). The

Eleventh Circuit thus employs a case-by-case approach to determine whether a particular plaintiff has assumed "some minimum responsibility" for pursuing his or her claims. *Zillyette v. Capital One Financial Corporation*, 179 F.3d 1337, 1340 (11th Cir. 1999).

Here, plaintiff's own actions resulted in his failure to receive the notice of right-to-sue in a timely manner. There is no evidence that he advised the EEOC of address changes, or otherwise took reasonable steps to ensure that he would receive the notice. Moreover, the court finds that plaintiff's delay in retrieving the notice from his mother did not satisfy his minimum responsibility for resolving his ADA claim. As the Eleventh Circuit has held, plaintiffs are required to

> assume the minimal burden of informing family members of suitable age and discretion that plaintiffs were expecting an important letter related to their pending claim, and that they needed to be alerted immediately following its delivery . . . [to] attempt[] to insure against the possibility of manipulation when the time of receipt is uniquely within the plaintiff's control. At the same time, we have recognized that when a plaintiff has not known of the receipt of the letter through no fault of his or her own or because of circumstances beyond his or her control, . . . the time must begin to run from the time of actual receipt.

*Zillyette*, 179 F.3d at 1340-41 (footnotes omitted). The court cannot conclude that the circumstances described by plaintiff in his untimely affidavit as delaying his actual receipt of the letter were beyond his control.

For all of the foregoing reasons, the court concludes that plaintiff has not established that he filed this action within the ninety-day limitation period and, accordingly, his ADA claim is barred.

### B.   Plaintiff's Fraud Claim Against Brent Wilhelm

Plaintiff also asserts a state law claim of fraud against his former supervisor, Brent Wilhelm, alleging, in essence, that Wilhelm falsely promised him that his employment with AmeriSource would not be terminated. Under Alabama law, the elements of promissory fraud are as follows:

15

> [T]he plaintiff must prove: (1) that the defendant made a false representation of a material fact; (2) that the false representation was relied upon by the plaintiff; (3) that the plaintiff was damaged as a proximate result of the reliance; (4) that the representation was made with a present intent to deceive; and (5) that when the representation was made the defendant intended not to perform in accordance with it.

*Howard v. Wolff Broadcasting Corp.*, 611 So. 2d 307, 311 (Ala. 1992) (emphasis omitted). Moreover, "[t]he burden is on the plaintiff to prove that when the promise was made the defendant intended to deceive." *Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 776 (Ala. 1998). "The plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, *any* breach of contract would constitute a fraud." *Id.* (emphasis supplied).

Plaintiff has offered no evidence that Wilhelm intended to deceive him. Indeed, to the contrary, plaintiff's deposition testimony demonstrates that Wilhelm was sympathetic to plaintiff's health problems, and found work for plaintiff to perform within his physical restrictions following two of his hospitalizations. Plaintiff was unable to return to work as requested by Wilhelm on each of those two occasions due to further medical problems requiring hospitalization. Moreover, plaintiff has not established that he relied on Wilhelm's representation to his detriment. Accordingly, defendant Brent Wilhelm is entitled to summary judgment.

### III. CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment is due to be granted. A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 11th day of December, 2002.

United States District Judge